Argued and submitted March 29, affirmed April 28, 2004

In the Matter of the Compensation of
Randy L. Goddard, Claimant.

Randy L. GODDARD,
*Petitioner,*

*v.*

LIBERTY NORTHWEST
INSURANCE CORPORATION
and Northwest Web Co.,
*Respondents.*

02-0190M; A121117

89 P3d 1215

David O. Wilson argued the cause and filed the brief for respondents.

Before Haselton, Presiding Judge, and Deits, Chief Judge, and Leeson, Judge pro tempore.

HASELTON, P. J.

### HASELTON, P. J.

Claimant seeks review of an order of the Workers' Compensation Board, issued pursuant to the board's own motion authority, ORS 656.278, in which the board held, *inter alia*, that it lacked statutory authority to award claimant permanent partial disability (PPD) benefits. Claimant contends that ORS 656.278(2)(d) unambiguously authorizes an award of such benefits where, as here, the injured worker's condition worsened after his aggravation rights had expired and he underwent surgery to address that worsening, resulting in additional permanent disability. We disagree and, consequently, affirm.

In the mid-1980s, claimant began experiencing right wrist pain. He submitted a claim for that condition that was accepted as a disabling claim, and he underwent an "STT arthrodesis."[1] Claimant's claim was closed on June 17, 1988.[2] Consequently, his aggravation rights expired on June 17, 1993.

Claimant experienced no pain for approximately a dozen years after his surgery. However, in the late 1990s, his pain returned and gradually increased to the point of being incapacitating. Ultimately, claimant determined, after extensive consultation, to undergo a total wrist arthrodesis, which would completely eliminate flexion and extension of the right wrist.

On July 9, 2001, the board issued an own motion order, reopening the claim, ordering insurer to pay temporary disability compensation from the time claimant was hospitalized for the surgery and directing insurer to reclose the claim when claimant was medically stationary.

On July 9, 2001, the same date that the board's original own motion order issued, claimant underwent the surgery. On July 12, 2002, insurer issued its notice of closure

---

[1] No party offers a definition of an "STT arthrodesis." However, a standard medical reference describes an "arthrodesis" as "[t]he stiffening of a joint by operative means." *Stedman's Medical Dictionary* 149 (27th ed 1999).

[2] The record does not disclose whether the original notice of closure included any award of PPD.

with an award of temporary disability benefits but without any award of PPD compensation for additional impairment that resulted from the surgery.

Claimant sought board review of the July 12, 2002, notice of closure, asserting, in part, that he was entitled to PPD benefits pursuant to ORS 656.278(2)(d). The board disagreed:

> "Here, the July 9, 2001 Own Motion Order authorized reopening the claim because claimant's compensable right wrist condition had worsened requiring surgery. The record contains no evidence that claimant made a claim for a new or omitted medical condition. In any event, prior to the statutory changes enacted by Oregon Laws 2001, chapter 865, sections 10 and 11, which became effective January 1, 2002, any 'post-aggravation rights' new or omitted medical condition claim[s] were processed under ORS 656.262 and 656.268; such claims were not processed as Own Motion claims under ORS 656.278 (1987). Under such circumstances, we find that claimant sustained a worsening of his compensable right wrist condition that is in Own Motion status and the claim was reopened for a worsening requiring surgery pursuant to ORS 656.278(1)(a). Therefore, at closure of that Own Motion 'worsened condition' claim, claimant is not entitled to permanent disability benefits because such benefits are not available for 'worsening condition' claims. Instead, permanent disability benefits for claims in Own Motion status are only available for 'post-aggravation rights' new and omitted medical condition claims."[3]

(Citations omitted.)

■    Claimant seeks review of that order,[4] reiterating his argument that ORS 656.278(2)(d) unambiguously confers an

---

[3] Board member Polich concurred on the central question of the proper construction of ORS 656.278(1) and (2). She acknowledged that, under *stare decisis*, she was bound by the board's disposition of the identical issue in *Jimmy O. Dougan*, 54 Van Natta 1213, *aff'd on recons*, 54 Van Natta 1552 (2002), but expressed her disagreement with that holding.

[4] After the board issued the order from which claimant petitioned, it withdrew that order to correct a clerical error and issued a modified order, which differed from the original order only in its correction of the clerical error. Although claimant did not seek review of the latter, modified order, that failure does not preclude our jurisdiction. *See* ORS 183.482(6); *see also Tektronix Corp. v. Twist*, 62 Or App 602, 604-05, 661 P2d 562, *rev den*, 295 Or 259 (1983) (ORS 183.482(6) applies to orders of the Workers' Compensation Board).

entitlement to PPD for all own motion claimants and not merely those who have initiated new or omitted medical condition claims after their aggravation rights under ORS 656.273 have expired. Insurer counters that the text and context of ORS 656.278(1)(a) and (1)(b), when read in conjunction with ORS 656.278(2), unambiguously preclude any such entitlement. Further, employer asserts, any arguable ambiguity is resolved by reference to the legislative history of the 2001 amendments to ORS 656.278.

■    ORS 656.278 provides, in part:

"(1)   Except as provided in subsection (7) of this section, the power and jurisdiction of the Workers' Compensation Board shall be continuing, and it may, upon its own motion, from time to time modify, change or terminate former findings, orders or awards if in its opinion such action is justified in those cases in which:

"(a)   *There is a worsening of a compensable injury that results in the inability of the worker to work and requires hospitalization or inpatient or outpatient surgery*, or other curative treatment prescribed in lieu of hospitalization *that is necessary to enable the injured worker to return to work.* In such cases, *the payment of temporary disability compensation* in accordance with ORS 656.210, 656.212(2) and 656.262(4) *may be provided* from the time the attending physician authorizes temporary disability compensation for the hospitalization, surgery or other curative treatment until the worker's condition becomes medically stationary;

"(b)   *The worker submits and obtains acceptance of a claim for a compensable new medical condition or an omitted medical condition pursuant to ORS 656.267 and the claim is initiated after the rights under ORS 656.273 have expired.* In such cases, the *payment of temporary disability compensation* in accordance with the provisions of ORS 656.210, 656.212(2) and 656.262(4) *may be provided* from the time the attending physician authorizes temporary disability compensation for the hospitalization, surgery or other curative treatment until the worker's condition becomes medically stationary, *and the payment of permanent disability benefits may be provided* after application of the standards for the evaluation and determination of disability as may be adopted by the Director of the Department

of Consumer and Business Services pursuant to ORS 656.726; or

"(c) The date of the injury is earlier than January 1, 1966. In such cases, in addition to the payment of temporary disability compensation, the payment of medical benefits may be provided.

"(2) Benefits provided under subsection (1) of this section:

"(a) Do not include vocational assistance benefits under ORS 656.340;

"(b) Do not include temporary disability compensation for periods of time during which the claimant did not qualify as a 'worker' pursuant to ORS 656.005(30);

"(c) Do not include medical services provided pursuant to ORS 656.245 except as provided under subsection (1)(c) of this section; and

"(d) *May include permanent disability benefits for additional impairment to an injured body part that has previously been the basis of a permanent partial disability award*, but only to the extent that the permanent partial disability rating exceeds the permanent partial disability rated by the prior award or awards."

(Emphasis added.) We construe the statute by first examining the text in context. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-11, 859 P2d 1143 (1993). If a plausible ambiguity remains after that "first-level" analysis, we then consider legislative history. *Id.* at 611-12.

Claimant's position rests on ORS 656.278(2)(d). Claimant emphasizes that the introductory language of subsection (2), "[b]enefits provided under subsection (1) of this section," refers to subsection (1) generally, without limitation. Thus, claimant reasons, all of subsection (2), including ORS 656.278(2)(d), applies to all of subsection (1), particularly including ORS 656.278(1)(a). Claimant further argues that the reference to "benefits for additional impairment to an injured body part" in paragraph (2)(d) contextually corroborates his construction:

"ORS 656.278(2)(d), in allowing for permanent disability benefits for 'additional impairment' to an injured body part

that has previously been the basis of a permanent partial disability award arguably could only apply to subsection (a) claims and not subsection (b) claims. This is because claims for new or omitted medical conditions under subsection (b) likely were not the subject of a previous award of permanent disability. Because a new medical condition or omitted medical condition claim has not been the subject of a prior award there could not be a disability rating that exceeded a prior award."

Insurer counters with two principal arguments. First, the text of subsection (1) unambiguously expresses the legislature's intent that the board's authority to award PPD benefits in own motion cases is limited to that class of cases described in paragraph (1)(b), *viz.*, new or omitted medical condition claims initiated after the expiration of aggravation rights. Insurer highlights the parallel construction of paragraphs (1)(a) and (1)(b) and asserts that the legislature's inclusion of PPD benefits in the latter but not in the former was hardly accidental.

Second, insurer contends, subsection (2) merely describes limitations on benefits available under subsection (1). In that regard, insurer, like claimant, points to subsection (2)'s introductory language, "benefits *provided under* subsection (1)," and reasons that, because an entitlement to PPD is not conferred under paragraph (1)(a), subsection (2) cannot act as an independent source of such an entitlement. (Emphasis added.)

On balance, insurer's "first-level" arguments are compelling. The parallel design of paragraphs (1)(a) and (1)(b), with an entitlement to PPD being included in the latter but not the former, is especially striking. We also agree that subsection (2) is more plausibly construed as describing limitations on benefits otherwise available under subsection (1), rather than as an independent source of entitlement. In a related sense, and contrary to claimant's suggestion, the reference to "additional impairment" in paragraph (2)(d) does not necessarily refer to the sort of "classic own motion" circumstance described in paragraph (1)(a). Rather, new or omitted medical condition claims within the purview of paragraph (1)(b) can also involve "a body part that has previously been the basis of a permanent partial disability award." ORS 656.278(2)(d).

In sum, we have little, if any, doubt after reviewing the statutory text in context that insurer's construction of the statute is correct. Any residual doubts are resolved by reference to the legislative history of the 2001 amendments to ORS 656.278, Oregon Laws 2001, chapter 865, section 11, which added ORS 656.278(1)(b) and most of subsection (2), including ORS 656.278(2)(d). In that regard, we endorse and incorporate by reference the cogent and comprehensive treatment of that legislative history set out in the board's majority opinion in *Jimmy O. Dougan*, 54 Van Natta 1213, *aff'd on recons*, 54 Van Natta 1552 (2002).

Affirmed.